UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BILLY D. FOWLER,

        Petitioner,

v.

MAGGIE MILLER-STOUT,

        Respondent.

Case No.  C07-5356RJB-KLS

REPORT AND RECOMMENDATION

Noted for December 21, 2007

    This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrates Rules MJR 3 and 4, and is before the Court on petitioner's motion for preliminary injunction and temporary restraining order. (Dkt. #15).  Petitioner is seeking federal *habeas corpus* relief pursuant to 28 U.S.C. § 2254.  Although petitioner is proceeding *pro se* in this matter, he does not have *in forma pauperisi* status.  Having reviewed petitioner's motion, respondent's response to that motion and petitioner's reply thereto, the undersigned submits the following Report and Recommendation for the Honorable Robert J. Bryan's review.

## DISCUSSION

    On July 18, 2007, petitioner filed his petition for writ of *habeas corpus*. (Dkt. #1).  Service of the petition was ordered on August 29, 2007 (Dkt. #6), and respondent filed a response to the petition on November 16, 2007 (Dkt. #19).  The petition currently is noted for consideration on December 14, 2007. Petitioner filed his present motion on October 22, 2007.

REPORT AND RECOMMENDATION
Page - 1

In his motion, petitioner states that on October 10, 2007, he was notified by the Washington State Department of Corrections ("DOC") that he was being promoted to "minimum security custody" status. (Dkt. #15-2, p. 1). Petitioner states that at the same time his DOC counselor told him he would be put in for a transfer from Airway Heights Corrections Center ("AHCC"), his current place of incarceration, to Larch Corrections Center ("LCC"), a minimum custody facility.[1] Petitioner claims LCC has no law library or law books, which he states are required for him to "effectively argue" his "ongoing Federal Cases." (Dkt. #15-2, p. 1). As such, petitioner asserts that should his transfer go through, his access to the courts "will be greatly compromised" for lack of "adequate means" with which to respond to the Court's report and recommendation, once it is issued, regarding his petition. (Id. at p. 2). Accordingly, he seeks an injunction on any such transfer until a decision on his petition is made.

Before petitioner's motion is analyzed under the two standards governing requests for preliminary injunctive relief discussed below, the undersigned shall address petitioner's alternate basis for seeking an order preventing his transfer. Petitioner asserts that under Federal Rule of Appellate Procedure ("FRAP") 23(a), he cannot be transferred to another institution without authorization to do so by this Court based on an application therefor by respondent. Specifically, FRAP 23 provides:

> **(a) Transfer of Custody Pending Review.** Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.

As the plain language of FRAP 23(a) makes clear, this rule applies only when a case is "[p]ending review of a decision in a habeas corpus proceeding." That is, FRAP 23(a) "applies only when a habeas action is before the court of appeals on review of a district court's decision." Mitchell v. McCaughtry, 291 F.2d 823, 835 (E.D.Wis. 2003); Pethtel v. Attorney General of Indiana, 704 F.Supp. 166, 168 (N.D.Ind. 1989) (Rule 23(a) applies to transfer of prisoner pending review of decision which already has been entered in habeas corpus proceeding). Because no decision regarding the petition in this case yet has been made by this Court, FRAP 23 simply does not apply here. See Pethtel, 704 F.Supp. at 169.

Even if application of FRAP 23(a) was appropriate based on the facts before the Court, petitioner

---

[1] See www.doc.wa.gov/facilities/larch.asp.

REPORT AND RECOMMENDATION
Page - 2

1  still would not be benefitted thereby. FRCP 23(a) is "designed to prevent prison officials from impeding
2  a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial
3  jurisdiction of the court in which a habeas petition is pending." Id. at 169 (quoting Goodman v. Keohane,
4  663 F.2d 1044, 1047 (11th Cir. 1981)); Mitchell, 291 F.2d at 835 n.20. However, transfer merely from
5  one DOC institution to another, particularly to one within the same district,[2] would not divest this Court
6  of jurisdiction over this matter. See 28 U.S.C. § 2241(d). In any event, transfers of prisoners which are
7  made in violation of FRAP 23 "do not divest the reviewing court of its jurisdiction." Pethtel, 704 F.Supp.
8  at 169 (quoting Hammer v. Meachum, 691 F.2d 958, 961 (10th Cir. 1982)).

9        With respect to petitioner's contention that seeking preliminary injunctive relief within the context
10  of his *habeas corpus* proceeding is proper, respondent argues such relief is not an available remedy under
11  28 U.S.C. § 2254. The undersigned agrees. Petitioner's objection to being transferred to another DOC
12  facility is essentially a conditions of confinement claim more properly brought pursuant to 28 U.S.C. §
13  1983. See McCarthy v. Bronson, 500 U.S. 136, 141-142 (1991); Preiser v. Rodriguez, 411 U.S. 475, 499
14  (1973). A *habeas corpus* action, on the other hand, is "the proper mechanism for a prisoner to challenge"
15  the fact or duration of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir.1991); Tucker v.
16  Carlson, 925 F.2d 330, 332 (9th Cir.1991). Petitioner seeks injunctive relief based on his conditions of
17  confinement, and not on a challenge to the fact or duration of confinement. The appropriate vehicle for
18  his request, therefore, is instead an action brought pursuant to Section 1983.

19        Lastly, plaintiff has failed to show that even if this *habeas corpus* action were the proper vehicle
20  through which to pursue his request for preliminary injunctive relief, he is in fact entitled to such relief.
21  The basic function of preliminary injunctive relief is to preserve the *status quo ante litem* pending a
22  determination of the action on the merits. Los Angeles Memorial Coliseum Com'n v. National Football
23  League, 634 F.2d 1197, 1200 (9th Cir. 1980). A party seeking injunctive relief must fulfill either of two
24  standards, the "traditional" or the "alternative":

25      Under the traditional standard, a court may issue injunctive relief if it finds that (1)

26  _____

27  [2]Petitioner states that LCC is a Washington State Department of Natural Resources ("DNR") facility. However, while the site upon which LCC is located is leased from the DNR, and that the DNR maintains its own facility on the site , provides work for the prisoners incarcerated at LCC, and supervises those prisoners who are assigned to work crews there, it appears that the DOC
28  is the state agency that actually runs LCC. See www.doc.wa.gov/facilities/larch.asp. Regardless, because LCC is still located in the State of Washington, and indeed in the Western District of Washington, the Court's jurisdiction to review the petition is not dependent on which state agency is ultimately responsible for it. See 28 U.S.C. § 2241(d).

REPORT AND RECOMMENDATION
Page - 3

> the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. . . . Under the alternative standard, the moving party may meet its burden by demonstrating either (1) a combination of probable success and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor.

Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987) (citations omitted). To obtain injunctive relief, the moving party must demonstrate exposure to irreparable harm absent the requested judicial intervention. Caribbean Marine Services Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).

Plaintiff has made no showing that the traditional or alternative standards for obtaining preliminary injunctive relief have been met here. He has failed to show that he will suffer irreparable harm were he to be transferred to the LCC. Indeed, it appears at this point in time any harm resulting from such a transfer is purely hypothetical. While petitioner says his counselor told him he was being put in for a transfer, no evidence has been submitted to the Court showing that the counselor in fact did so, or that any action to actually transfer petitioner has been taken by either respondent or the DOC, let alone that such a transfer already has taken place. The harm alleged by petitioner at present thus is speculative and contingent, and, accordingly, the undersigned is unable to determine whether a transfer is even probable.

In addition, petitioner has not shown a likelihood of success on the merits of the grounds he raises in his *habeas corpus* petition. Nor has petitioner established that the balance of potential harm in this case favors him. Petitioner argues that issuance of an injunction preventing his transfer is warranted, because his right to access the courts will be greatly compromised due to the lack of a law library or law books at LCC. However, the Supreme Court has made clear that a prisoner has no constitutionally protected liberty interest in being confined at a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (Due Process Clause alone does not protect against transfer from one prison institution to another within same state prison system; confinement in any institution within same state prison system is within normal limits or range of custody prisoner's conviction has authorized state to impose).

The Court, furthermore, should defer to the penological decisions of state officials, absent a strong countervailing reason, so as to avoid undue "involvement of federal courts in the day-to-day management of prisons." Sandin v. Conner, 515 U.S. 472, 482 (1995). Petitioner has not alleged, let alone shown, that his potential transfer is for an illegitimate purpose, such as retaliation. Rather, it appears such a transfer is

REPORT AND RECOMMENDATION
Page - 4

1 being considered solely because of petitioner's promotion in custody status. As for the potential harm
2 that petitioner asserts will occur in terms of his ability to access the courts should the transfer go through,
3 the undersigned finds petitioner has failed to show the likelihood that he will be deprived of a
4 constitutionally protected right if transferred to the LLC.

5 Prisoners do have "a constitutional right of access to the courts." Cornett v. Donovan, 51 F.3d
6 894, 897 (9th Cir. 1995). That right "requires prison authorities to assist inmates in the preparation and
7 filing of meaningful legal papers" by providing them with "adequate law libraries or adequate assistance
8 from persons trained in the law." Lewis v. Casey, 518 U.S. 343, 346 (1996) (quoting Bounds v. Smith,
9 430 U.S. 817, 828 (1977)). However, the right to access the courts has not been extended "to apply
10 further than protecting the ability of an inmate to prepare a petition or complaint." Wolff v. McDonnell,
11 418 U.S. 539, 576 (1974); Cornett, 51 F.3d at 899 ("The right of access is designed to ensure that a
12 habeas petition or a civil rights complaint of a person in state custody will reach a court for
13 consideration."). As so succinctly stated by the Ninth Circuit:

> The Court [in Wolff] expanded the substantive claims encompassed within the right of access, concluding that inmates have the right to assistance with civil rights actions. *Id.* at 579, 94 S.Ct. at 2986. However the Court did not extend the scope of the right of access to require assistance with portions of the cause beyond the pleadings, stating only that inmates had the right to " *present* to the judiciary *allegations* concerning [civil rights violations]." *Id.* (emphasis added). The Court added that inmates' rights would lose meaning if they "were unable to *articulate* their complaints to the courts." *Id.* (emphasis added).
>
> In the leading case on the right of access, the Supreme Court continued to state that its "main concern" was " 'protecting the ability of an inmate to *prepare a petition or complaint*.' " *Bounds*, 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17 (quoting *Wolff*, 418 U.S. at 576, 94 S.Ct. at 2984) (emphasis added). Other portions of the Court's discussion in *Bounds* also indicate that the Court did not intend to expand the right of access past the pleading stage. According to the Court, a law library or legal assistance was necessary to formulate "a habeas corpus *petition* or civil rights *complaint.* " 430 U.S. at 825, 97 S.Ct. at 1496-97 (emphasis added). The Court added that a competent lawyer would not "file an initial pleading" without researching a number of issues, including the facts necessary to "state a cause of action." *Id.*, 430 U.S. at 825, 97 S.Ct. at 1497. The Court later reiterated that legal research or advice was necessary "to make a meaningful *initial presentation*" to a trial court. *Id.* at 828, 97 S.Ct. at 1498 (emphasis added). Finally, the Court held the right of access required that prisons assist inmates "in the preparation and filing of meaningful legal papers." *Id.*
>
> Considering the Court's discussion in *Wolff* and *Bounds* in totality, we conclude the Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action. The Supreme Court has delineated the stages of litigation for which the right of access requires assistance and we are not free to expand the scope of the right beyond these limits.

1  Connett, 51 F.3d at 898.

2      Petitioner already has presented his *habeas corpus* petition to the Court. In light of the holdings
3  of Wolff and Connett discussed above, petitioner has no constitutionally protected right to be provided
4  with a law library, law books or other prison legal resources for use in responding to the undersigned's
5  eventual report and recommendation as he claims. Because petitioner cannot show he is entitled to such
6  access or the injunctive relief he is requesting, he cannot show the balance of harm favors him, or even
7  that he will be subject to any actual injury for the reasons discussed above. Lastly, petitioner has not
8  shown the public interest favors granting the requested relief, and, indeed, it appears the opposite is true.

## CONCLUSION

10      For all of the above reasons, the Court should deny petitioner's motion for preliminary injunction
11  and temporary restraining order. (Dkt. #15).

12      Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),
13  the parties shall have ten (10) days from service of this Report and Recommendation to file written
14  objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those
15  objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit
16  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **December**
17  **21, 2007**, as noted in the caption.

18      The Clerk is directed to send a copy of this Order to petitioner and counsel for respondent.
19      DATED this 29th day of November, 2007.

                                                Karen L. Strombom
                                                United States Magistrate Judge